UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:21-CR-00471 SRC ) |
| MICHAEL BELL, | ) ) ) |
| Defendant. | ) |

## GUILTY PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

### 1. PARTIES:

The parties are the defendant Michael Bell (hereinafter "Defendant" or "Bell"), represented by defense counsel Charles Banks, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

### 2. GUILTY PLEA:

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the Defendant's voluntary plea of guilty to Counts One, Three, and Five of the Indictment, the Government agrees to dismiss Counts Two, Four and Six at the time of sentencing and that no

1

further prosecution will be brought in this District relative to Defendant's violations of federal law, known to the United States at this time, arising out of the events set forth in the Indictment.

The parties also agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. **Further, as a result of the parties' negotiation, the parties jointly recommend that, regardless of whether such sentence is accomplished via a Guidelines sentence or by means of a variance from a Guideline sentence, the parties agree and respectfully recommend that Defendant be sentenced to an aggregate term of imprisonment of 36 months on Counts One, Three and Five, to be served concurrently.** The parties understand that the Court is neither a party to nor bound by the Guidelines agreed to in this document.

**3. ELEMENTS:**

**COUNT ONE:** As to Count One, the Defendant admits to knowingly violating Title 21, United States Code, Section 841(a), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are as follows:

(i) That on or about September 8, 2019, within the Eastern District of Missouri, the Defendant possessed heroin and fentanyl, Schedule I and Schedule II controlled substances, respectively;

(ii) That Defendant did so knowingly and intentionally; and

(iii) That at the time Defendant possessed the heroin and fentanyl, Defendant intended to distribute some or all of the heroin and fentanyl to another person.

**COUNT THREE:** As to Count Three, the Defendant admits to knowingly violating Title 21, United States Code, Section 841(a), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are as follows:

2

(i) That on or about October 22, 2019, within the Eastern District of Missouri, the Defendant possessed heroin and fentanyl, Schedule I and Schedule II controlled substances, respectively;

(ii) That Defendant did so knowingly and intentionally; and

(iii) That at the time Defendant possessed the heroin and fentanyl, Defendant intended to distribute some or all of the heroin and fentanyl to another person.

**COUNT FIVE:** As to Count Five, the Defendant admits to knowingly violating Title 21, United States Code, Section 841(a), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are as follows:

(i) That on or about January 29, 2020, within the Eastern District of Missouri, the Defendant possessed heroin and fentanyl, Schedule I and Schedule II controlled substances, respectively;

(ii) That Defendant did so knowingly and intentionally; and

(iii) That at the time Defendant possessed the heroin and fentanyl, Defendant intended to distribute some or all of the heroin and fentanyl to another person.

## 4. FACTS:

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

On September 8, 2019, close to midnight, Bell was observed in a car straddling two lanes near the intersection of Old St. Charles and Fee Fee, in Bridgeton, Missouri. Bridgeton police officers activated emergency lights and sirens to conduct a traffic stop. A police officer approached the passenger side and made contact with two occupants. When he did, the officer saw capsules appearing to be heroin or fentanyl on the passenger floorboard. He ordered the driver, Michael Bell, and the female passenger, out of the vehicle. They were detained and handcuffed.

3

Bell was *Mirandized* and admitted the capsules contained heroin. There were 13 capsules and a small white zippered case in the glove compartment, which Bell admitted contained Heroin, Cocaine, and Methamphetamine. Bell also informed Gholson that a backpack in the backseat contained a pistol. Gholson located the pistol in the backpack and discovered it to be a Glock 17 9 mm pistol loaded with 12 rounds of 9mm ammunition. The drugs were seized from the vehicle and analyzed by an expert chemist who determined they were: 1.769 grams of heroin individually packaged into 4 plastic baggies and 13 capsules containing .58 grams of a mixture of heroin and fentanyl in each capsule; .281 grams of cocaine base; and .182 grams of a mixture or substance containing methamphetamine.

Approximately six weeks later, on October 22, 2019, North County Police Cooperative officers responded to 205 Menett Avenue in for a peace disturbance; specifically, a black pick-up truck blaring loud music. Officers arrived and found the pickup, playing load music, with the occupant of the vehicle slumped over. Officers knocked on the window and the occupant woke up and attempted shift out of park but had nowhere to go since a police car was parked behind him. The occupant, identified as Bell, complied with directions to turn off the pick-up. Officers observed his eyes were pinpoint and he had difficulty having a conversation as he was falling asleep. He was detained, as officers believed he was under the influence of a controlled substance. They found a .9mm semiautomatic pistol on his person, along with a bottle of dormin, a common cutting agent used to package heroin. The owner of 205 Menett, Bell's grandmother, consented to a search of her residence where Bell also was residing. In the basement, officers located, among other things two black blenders which contained a large amount of white residue inside; one digital scale with a white powdery residue; one plastic cup which contained a large amount of empty capsules; various

4

amounts of plastic packaging materials; one black Taurus 9mm handgun bearing a defaced serial number, two pistol magazines, one rifle magazine and nine .223 caliber rounds and a box containing .22 caliber rounds. In a small unlocked safe, officers located suspected controlled substances which were later analyzed by an expert chemist and determined to be baggies containing: 3.401 grams of a mixture of heroin and tramadol; .209 grams of heroin, .201 grams of a mixture of fentanyl and tramadol and 25 2 MG tablets of Alprazolam.

On January 29, at 7:30 PM, University City police responded to 8516 Elmore Avenue for a report of a disturbance. They heard yelling and knocked on the door. A woman yelled "He won't open the door!" and then ultimately a female (Sheryl Scoggins) opened the door. Bell was patted down and detained; they located a .22 caliber handgun (loaded), 10 blue pills (Xanax), and individually wrapped baggies containing a white powder in a fanny pack around Bell's chest. The substances seized from Bell were analyzed by an expert chemist and determined to be: 10 1 mg pills of Alprazolam,

Labs disclosed 10 1 mm Alprazolam pills and baggies containing: 3.509 grams of mixture of fentanyl, heroin and tramadol; .69 grams of cocaine base; .194 grams of a mixture of heroin, fentanyl, and tramadol; .383 grams of heroin; .394 grams of a mixture of heroin and tramadol; .446 grams of heroin; .162 grams of methamphetamine respectively, and a Glass amber vial containing white .129 grams of a mixture of heroin, fentanyl, and tramadol.

In the event of trial, the Government would present expert testimony regarding the trafficking of drugs in the St. Louis area, including, specifically, the use of cutting agents such as dormin to "stretch" substances like heroin and fentanyl to allow traffickers to earn a larger profit; the use of blenders to mix heroin and fentanyl with cutting agents; the use of pill capsules to

package heroin and fentanyl for easy transfer and sale; the use of digital scales by drug traffickers to weigh out their products; and the use of firearms as tools of the drug trafficking trade used by drug traffickers to protect themselves, their product, and the cash proceeds of their drug sales. The Government would also present evidence that Bell possessed distributable amounts of heroin and fentanyl, particularly in light of the known potency of even small amounts of fentanyl.

**5. STATUTORY PENALTIES:**

The Defendant fully understands that the maximum possible penalty provided by law for Counts One, Three, and Five is imprisonment of not more than 20 years, a fine of not more than $1,000,000, or both such imprisonment and fine. The Court shall also impose a period of supervised release of not less than 3 years.

**6. U.S. SENTENCING GUIDELINES: 2018 MANUAL:**

The Defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the U.S. Sentencing Guidelines Total Offense Level provisions that apply:

**A. Offense Conduct:**

    (i)    **Chapter 2 Offense Conduct:**

        (a)    **Base Offense Level**: As to Counts One, Three, and Five, the parties agree that the base offense level is 12, as found in Section 2D1.1(c)(14). The parties agree that the quantity heroin and fentanyl for which the Defendant is accountable, including relevant conduct, totals less than 4 grams of fentanyl and less than 10 grams of heroin, resulting in the agreed Base Offense Level.

**(b)** **Specific Offense Characteristics**: The parties agree that the following Specific Offense Characteristics apply: two levels should be added pursuant to Section 2D1.1(b)(1) because the Defendant possessed a firearm.

**B. Chapter 3 and 4 Adjustments**:

**(i)** **Acceptance of Responsibility:** The parties recommend that two levels should be deducted pursuant to Sentencing Guidelines Section 3E1.1(a) because Defendant has clearly demonstrated acceptance of responsibility.

**C. Estimated Total Offense Level**: Based on these recommendations, the parties estimate that the Total Offense level is as follows:

**(i)** As to Counts One, Three, and Five, the parties estimate that the Total Offense Level is 12, unless Defendant is a Career Offender. Depending on the underlying offense and Defendant's criminal history, Defendant could be a Career Offender pursuant to Section 4B1.1. If the Court finds Defendant is a Career Offender, the Total Offense Level may be higher and the Criminal History Category may be as high as Category VI. Defendant has discussed these possibilities with defense counsel. Both parties reserve the right to argue that the Defendant is or is not a Career Offender.

**D. Criminal History:** The determination of the Defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the Defendant's criminal history and the applicable category. The Defendant's criminal history is known to the Defendant and is substantially available in the Pretrial Services Report.

7

**E. Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

## 7. WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:

**A. Appeal:** The Defendant has been fully apprised by defense counsel of the Defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

**(1) Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea, the constitutionality of the statute(s) to which Defendant is pleading guilty and whether Defendant's conduct falls within the scope of the statute(s).

**(2) Sentencing Issues:** In the event the Court accepts the plea, accepts the U.S. Sentencing Guidelines Total Offense Level agreed to herein, and, after determining a Sentencing Guidelines range, sentences the Defendant within or below that range, then, as part of this agreement, the Defendant hereby waives all rights to appeal all sentencing issues other than Criminal History, but only if it affects the Base Offense Level or Criminal History Category. Similarly, the Government hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea, the agreed Total Offense Level and sentences the Defendant within or above that range.

8

**B. Habeas Corpus:** The Defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**C. Right to Records:** The Defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

## 8. OTHER:

**A. Disclosures Required by the United States Probation Office:** The Defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

**B. Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:**

Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the Defendant.

**C. Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the Defendant and may impose special conditions related to the crime Defendant committed. These conditions will be restrictions on the Defendant to which the Defendant will be required to adhere. Violation of the conditions of supervised release resulting

9

in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The Defendant understands that parole has been abolished.

**D. Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $300, which the Defendant agrees to pay at the time of sentencing. Money paid by the Defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

**E. Possibility of Detention:** The Defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

**F. Fines, Restitution and Costs of Incarceration and Supervision:** The Court may impose a fine, costs of incarceration and costs of supervision. The Defendant agrees that any fine imposed by the Court will be due and payable immediately.

**G. Forfeiture:**

The Defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The Defendant agrees that said items may be disposed of by law enforcement officials in any manner.

**9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:**

10

In pleading guilty, the Defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses charged against the Defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The Defendant further understands that by this guilty plea, the Defendant expressly waives all the rights set forth in this paragraph.

The Defendant fully understands that the Defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The Defendant's counsel has explained these rights and the consequences of the waiver of these rights. The Defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The Defendant is fully satisfied with the representation received from defense counsel. The Defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the Defendant has requested relative to the government's case and any defenses.

11

The guilty plea could impact Defendant's immigration status or result in deportation. In particular, if any crime to which Defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory. Defense counsel has advised the Defendant of the possible immigration consequences, including deportation, resulting from the plea.

**10. VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:**

This document constitutes the entire agreement between the Defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the Defendant states that no person has, directly or indirectly, threatened or coerced the Defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The Defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The Defendant further acknowledges that this guilty plea is made of the Defendant's own free will and that the Defendant is, in fact, guilty.

**11. CONSEQUENCES OF POST-PLEA MISCONDUCT:**

After pleading guilty and before sentencing, if Defendant commits any crime, other than minor traffic offenses, violates any conditions of release that results in revocation, violates any term of this guilty-plea agreement, intentionally provides misleading, incomplete, or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported

by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

## 12. NO RIGHT TO WITHDRAW GUILTY PLEA:

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the Defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

8/23/22
Date

LISA M. YEMM
Assistant United States Attorney

6/23/22
Date

MICHAEL BELL
Defendant

8/23/22
Date

CHARLES BANKS
Attorney for Defendant

13